# Toomer, Sykes & Billups *v.* Randolph.

*Attachment against Non-Resident; Garnishment.*

1. *Theory of mortgage, at law and in equity, as to rents and profits received by mortgagee.*—At law, in the absence of a reservation or stipulation to the contrary, the mortgagee has an immediate right of entry and possession, and, after default, the estate vests in him absolutely, leaving in the mortgagor nothing but the equity of redemption, of which courts of law do not take cognizance; but, in equity, the mortgagee is regarded as a trustee of the rents and profits for the mortgagor, and is bound to apply them to the extinguishment of the debt, after paying taxes, necessary repairs, &c.

2. *Garnishment against mortgagee.*—A second mortgagee can not by a garnishment against the first mortgagee, as the debtor of the mortgagor, reach and subject rents and profits received by the garnishee in excess of his debt.

APPEAL from the Circuit Court of Hale.

The record does not show the name of the presiding judge.

This action was brought by the appellants, suing as partners, against Philip B. Cabell; and was commenced by attachment, sued out on the ground of the defendant's non-residence. The affidavit for the attachment was made on the 26th *January*, 1876, before a justice of the peace of the city and county of Mobile, by whom also the attachment bond was taken and approved; and it is recited in the bond that the attachment *has* been obtained, returnable to the next term of the Circuit Court of Hale. The attachment set out in the record, which is dated the 29th *February*, 1876, was issued by the clerk of the Circuit Court of Hale, and was executed by summoning T. B. Randolph, by process of garnishment, as the debtor of said Cabell. The plaintiffs' cause of action was the defendant's promissory note for $706.84, dated the 25th February, 1874, and payable to the plaintiffs, at their office in Mobile, on or before the 1st December, 1874. The garnishee appeared, in answer to the summons, and filed the following answer:

"On or about the 28th December, 1870, this garnishee

loaned to said P. B. Cabell the sum of $5,000; for which said Cabell contracted and agreed to pay him ten per cent. *per annum* interest thereon; and said Cabell paid interest on said loan, according to said contract, up to 1st January, 1873. At the time of making said loan to said Cabell, he, the said Cabell, executed to this garnishee his promissory note, secured by a mortgage, with power of sale, upon the following lands," describing them; "a copy of which mortgage is hereto attached as a part of this answer, and referred to as a part of this answer. Said Cabell failed to pay any interest on said loan, after the 1st January, 1873; and thereupon, on or about the 1st January, 1875, garnishee took possession of said land under said mortgage, and rented it for the year 1875, for fourteen bales of cotton; of which rent, he collected twelve bales, and sold them on or about the 1st November, 1875, the net proceeds amounting to $720, which was received by this garnishee; and the other two bales garnishee paid and allowed to the tenant, Sylvester Robinson, for repairing gin-house and screw. Afterwards, on or about the 6th December, 1875, garnishee proceeded to advertise and sell said real property, for the satisfaction of said debt, in accordance with the power of sale in said mortgage; and at the sale thereof, on the 6th December, 1875, had the same bid in for him, by his attorney, for the sum of $6,651.43, there being no other bid for said property. Garnishee conveyed said lands, by deed, to one P. A. Tutwiler, for a consideration of $6,651.43, and said Tutwiler immediately reconveyed said lands to him, for $6,651.43; but no money was paid by said Tutwiler to garnishee, nor by garnishee to said Tutwiler. Garnishee had paid out on said land, taxes for 1874, $100; taxes for 1875, $100.72; advertising sale of said property, $12; auctioneer's fee, $5; and the interest on said mortgage debt, at the time of the sale, was $1,464.59; and there was due from this garnishee to said Cabell, as a credit on said mortgage debt, the sum of $35, for a cow bought of him. Plaintiffs hold a second mortgage on said lands. Garnishee does not deny their right, or the right of the defendant in attachment, to redeem said property, or to have the rent referred to appropriated, *pro tanto*, in extinguishment of said debt; and he is and has been willing, and has offered, to take in redemption thereof less than the amount actually due, deducting said rents, and now offers to do so. Otherwise than as may be shown by the above statement of facts, garnishee is not now, and was not at the time of the service of the garnishment in this case, indebted to the said P. B. Cabell, nor did he have any effects, goods, &c., belonging to said defendant, in his possession, or under his control."

The mortgage set out in the record, as the one referred to in the answer, recites the payment of $5,000 as its consideration, conveys the lands by the usual words of conveyance, and is conditioned as follows : "The conditions of the foregoing conveyance are such, that whereas the said Randolph hath this day loaned to the said Cabell the sum of $5,000; for which the said Cabell has executed his promissory note, of even date herewith, payable to the said T. B. Randolph on the first day of January, 1872, with interest thereon from this date, for the sum of $5,000 : now, if the said Cabell do well and truly pay the said note, on or by the said 1st January, 1872, in that event, the foregoing deed shall cease to be of any force or effect, and forever satisfied and discharged ; but, if the said Cabell shall fail, refuse, or neglect, well, truly, and fully to pay off the said note, or any part thereof, on or by the said 1st January, 1872, then the foregoing deed shall be of full force and binding; and the said Randolph shall be, and he is hereby, fully authorized and empowered, after giving due notice by publication, for the same [time?], and in the same way as is given by sheriffs in sales of land under execution, to sell said real estate, or so much thereof as may be necessary for the payment of said note, or whatever part thereof may remain unpaid; first applying the proceeds of sale towards paying and discharging the costs of executing this trust, and then satisfying said note and mortgage; and shall pay the balance, if any there be, to the said Cabell. And in case of a sale, the said Randolph is further authorized to make full and sufficient titles to the purchaser or purchasers."

On this answer, the court refused to render a judgment against the garnishee, and discharged him; and this judgment is now assigned as error by the plaintiffs in attachment,

JAS. E. WEBB, for the appellants.—By express stipulation in the mortgage, Randolph was bound to pay any balance remaining in his hands, after satisfying his debt, to Cabell; and he would have been equally liable to do so, without an express stipulation. For this balance, Cabell might have maintained an action of assumpsit, as for money had and received; hence, any creditor of his might reach and subject it by garnishment.—*Hitchcock v. Lukens*, 8 Porter, 333, and authorities cited in 1 Brickell's Digest, 175, § 314. The fact that plaintiffs are second mortgagees of the land, does not take away their right to sue out a garnishment. Their mortgage is no where set out in the record, and the court can know nothing as to its terms and conditions. As mortgagees,

never having had possession, they could not recover the $720 as rents, without proving more than is contained in this record. At most, they might elect to treat it as the money of their debtor, and subject it by garnishment. There was no tort to be waived by Cabell, as necessary to an action of assumpsit for the money. So soon as Randolph purchased at his own sale, he became the debtor of Cabell for this money, and will so remain until Cabell elects to set aside the sale in equity.—*Charles v. Dubose*, 29 Ala. 370; *Williams v. Hatch*, 38 Ala. 342; 45 Ala. 482; 1 Story's Eq. Pl. § 317. There is a marked difference between the ancient and the modern authorities, English and American, in reference to the relative rights of mortgagor and mortgagee; and the recognized doctrine now is, that a mortgage is but a security for a debt, and that a reception of the rents by the mortgagee, after the law-day, extinguishes the debt. The distinction between the ancient and the modern doctrine is pointed out in 1 Hilliard on Mortgages, 235, § 1 : *Ib.* 453, § 6, 454, § 11. See, also, *Norton v. Willard*, 4 Johns. 42; *Ewer v. Hobbs*, 5 Metcalf, 1; 11 Johns. 534; 3 Black, 435; 16 Mass. 8; *Kennett v. Plummer*, 28 Mo. 145; 4 Kent's Com. (ed. 1858), 160, m. p.; 2 Brightly's Digest, 2659, § 1. An action for money had and received is an equitable action. Cabell might have maintained it against Randolph, without resorting to a court of equity; and his creditor might therefore sue out a garnishment.—*Davis v. Lassiter*, 20 Ala. 561; *Huckabee v. May*, 14 Ala. 263; 9 Pick. 171; 1 Hilliard on Mortgages, 423.

THOS. J. SEAY, *contra.*—At law, the mortgagee is regarded as the owner of the estate, and is entitled to the rents and profits in that character, subject to an accounting in equity. *Hubbell v. Moulson*, 53 N. Y. 225; *Hamner v. Harrell*, 2 Stew. & P. 323. Hence, Cabell could not maintain an action at law against Randolph, to recover the $720 received as rents. Even if he could maintain such action, he might prefer to file a bill in equity to set aside the sale, and to make the mortgagee account; and the plaintiffs can not deprive him of this right of election.—*Lewis v. Dubose*, 4 Rich. 219; Drake on Attachment, § 545; *Bingham v. Rushing*, 5 Ala. 403; *Fellows v. Duncan*, 13 Metc. 332; 6 Humph. 328; *Turner v. Armstrong*, 9 Yerger; *Cobb v. Bishop*, 27 Vt. 624. If the $720 received by Randolph is in excess of his entire debt, it belongs, *ex aequo et bono*, to the second mortgagees, and they may recover it by action in their own names against him.— *Webster & Wilson v. Singley*, 53 Ala. 208. Having that right of action, they can not reach it by garnishment.—*Cook v,*

*Walthall*, 20 Ala. 334 ; *Henry & Caldwell v. Murphy*, 54 Ala. 246.

BRICKELL, C. J.—A mortgagee, if there is not in the mortgage a stipulation to the contrary, or a reservation by the mortgagor of possession until default in the payment of the mortgage debt, has the immediate right of entry, and may eject the mortgagor or his tenants.—*Duval v. McLoskey*, 1 Ala. 737 ; *Welsh v. Phillips*, 54 Ala. 309. The theory of a mortgage, prevailing in this State, is that, at law, it creates in the mortgagee a direct, immediate estate in the land—*a fee simple, unless otherwise expressly limited*. The estate is conditional—annexed to the fee is a condition, which may defeat it. If the mortgagor, not having reserved the right of possession until default in the performance of the condition, remains in possession, he is the mere tenant at will of the mortgagee. After the law-day, and default in the performance of the condition, the estate vests absolutely in the mortgagee—the fee is freed from the condition annexed to it. Nothing remains in the mortgagor but the equity of redemption, of which, as between mortgagor and mortgagee, courts of law do not take notice. Before default, all that remains in him is the right to perform the condition, and thereby restore his original estate.—*Paulling v. Barron*, 32 Ala. 11 ; *Barker v. Bell*, 37 Ala. 358 ; *Welsh v. Phillips, supra*.

In courts of equity, the theory of a mortgage is, that until foreclosure it is a mere security for a debt, the mortgagor continuing the real owner of the fee. From this theory results the general principle, that a mortgagee in possession, before or after default in the payment of the mortgage debt, and before foreclosure, is a trustee of the rents and profits for the mortgagor, and bound to apply them in extinguishment of the mortgage debt.—*Davis v. Lassiter*, 20 Ala. 561 ; 2 Wash. Real Prop. 221, § 9. All reasonable expenditures for taxes, necessary repairs, and other necessary expenses incurred on account of the estate, the mortgagee is allowed to retain from the rents and profits ; and it is the balance only which may be applied in extinguishment of the mortgage debt. An accounting is necessary to the ascertainment of the balance. The law does not apply the balance of the rents and profits to the mortgage debt ; for, at law, they accrue to the mortgagee, as the owner of the legal estate. It is in equity only the application is made, in the nature of an equitable set-off, and as an incident to the right of redemption.—*Hubbell v. Moulson*, 53 N. Y. 225.

2. If it is admitted that the mortgagor, notwithstanding the second mortgage to the appellants, has a right to compel

[Walker v. Griffith.]

the application of the rents received by the appellee while in possession, to the payment of the mortgage debt, the remedy is exclusively in equity, and is incidental to the right of redemption. In a court of law, the appellee is regarded as having received only and simply the issues of his own estate. A garnishment is strictly a legal proceeding, operating only on the rights of the defendant in attachment or judgment, which he could in an action at law enforce in his own name. It can not be converted into a method of drawing within the jurisdiction of courts of law matters and rights of purely equitable cognizance.—*Harrell v. Whitman*, 19 Ala. 135; *Roby v. Labuzan*, 21 Ala. 60; *Godden v. Pierson*, 42 Ala. 370; *Henry v. Murphy*, 54 Ala. 246.

What may be the rights of the appellants, as subsequent mortgagees, can not be considered or determined in the present proceeding. A garnishment is not a remedy for the enforcement of any cause of action vesting only in the creditor suing it out. Its whole scope and operation is to subject legal demands recoverable only by the debtor, or property of his which is subject to execution.—*Henry v. Murphy, supra; Thompson v. Wallace*, 3 Ala. 132.

There is no error in the record, and the judgment is affirmed.